**In the Matter of the ESTATE OF William Theodore CRENSHAW, a/k/a William T. Crenshaw, a/k/a William Crenshaw, a/k/a Ted Crenshaw, Deceased.**

**Tedd Crenshaw and Jeff Crenshaw, Plaintiffs–Appellants,**

v.

**Beryl I. Bussey, Personal Representative, Defendant–Appellee.**

No. 03CA0218.

Colorado Court of Appeals, Div. III.

Aug. 26, 2004.

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.

Law Offices of J.E. Losavio, Max A. Wilson, Pueblo, Colorado, for Plaintiffs–Appellants.

Banner, Bower, Chostner, Kwitek & Ohlsen, J.E. Chostner, Pueblo, Colorado, for Defendant–Appellee.

Opinion by Judge GRAHAM.

The trial court concluded as a matter of law that the Colorado dead man's statute did not exclude testimony by Beryl I. Bussey, who asserted a right to be the personal representative of the estate of Theodore Crenshaw by virtue of her purported common law marriage to him. Tedd Crenshaw and Jeff Crenshaw (the Crenshaws), sons of the decedent from a previous marriage, appeal the resulting judgment in Bussey's favor. We agree that the trial court erred in admitting Bussey's testimony, and therefore we vacate the judgment and remand.

Bussey and the decedent met in 1987, and after dating for about three years, they moved in together. They lived together until the decedent's death in 2002. The decedent died intestate.

Bussey applied to be the personal representative of the estate based on her status as a common law spouse. After she was so appointed, the Crenshaws petitioned for her removal pursuant to § 15–12–611(1), C.R.S. 2003. Bussey requested a jury trial, which the court granted.

The Crenshaws then filed a motion in limine to prevent Bussey from testifying at trial in violation of the dead man's statute and to exclude as hearsay certain documents evidencing a relationship between Bussey and the decedent. The court denied the motion, and Bussey testified at trial regarding her relationship with the decedent. Bussey also introduced various documents that she identified as indicia of the marriage. The jury found that there was a lawful common law marriage between Bussey and the decedent.

The Crenshaws moved to set aside the jury verdict, arguing that it was only advisory and that the trial court should rule as a matter of law whether Bussey and the decedent had effected a common law marriage.

The court concluded that a jury trial was proper, but noted that, even if the jury verdict were considered advisory, it concurred with the jury's recommendation and found sufficient evidence of a common law marriage.

■ The Crenshaws contend that the trial court erred in denying their motion in limine to prevent Bussey from testifying at trial in violation of the dead man's statute. We agree.

We review conclusions of law de novo. *Valdez v. People,* 966 P.2d 587 (Colo.1998).

The dead man's statute in effect when this action was filed disallows testimony by any witness concerning transactions or conversations with a decedent where the witness has an interest adverse to the estate:

> No party to any civil action, suit, or proceeding or person directly interested in the event thereof shall be allowed to testify therein of such person's own motion or in such person's own behalf ... when any adverse party sues or defends ... as the executor or administrator, heir, legatee, or devisee of any deceased person ... unless when called as a witness by such adverse party so suing or defending....

Colo. Sess. Laws 1994, ch. 178, § 13–90–102(1) at 1040 (repealed July 1, 2002); *Stratton v. Rice,* 66 Colo. 407, 181 P. 529 (1919); *cf.* § 13–90–102, C.R.S.2003.

■ The policy underlying the dead man's statute is to guard against perjury by living interested witnesses when deceased persons cannot refute the testimony, thus protecting estates against unjust claims. *Breeden v. Stone,* 992 P.2d 1167 (Colo.2000).

■ A potential witness is disqualified if she is a party to the suit, or she will gain or lose by the direct legal operation of the judgment, and her testimony is offered against an heir, legatee, devisee, or other person listed in the statute. A probate contest falls within the statute because the purpose of the suit is to divest legatees and devisees of all rights in the decedent's estate. *Breeden v. Stone, supra.* A test for the applicability of such a statute has been de-

scribed as "whether the deceased, if living, could contradict the witness of his own knowledge." *Thor v. McDearmid*, 63 Wash. App. 193, 199, 817 P.2d 1380, 1385 (1991)(considering Washington statute).

■ The dead man's statute has been construed as providing protection for the benefit of an estate; consequently, where the result of a proceeding can neither increase nor diminish the estate, the statute is inapplicable. *Nat'l State Bank v. Brayman*, 30 Colo. App. 554, 497 P.2d 710 (1972), *rev'd*, 180 Colo. 304, 505 P.2d 11 (1973).

Here, the trial court concluded that the dead man's statute did not apply because Bussey's claim of marriage to the decedent "doesn't affect the estate, but how the estate would be settled. Who would get portions of his estate? It doesn't reduce the estate." Thus, the trial court ruled that the statute did not apply because the estate would not be diminished if the common law marriage were proved.

The court also concluded that "once there were conversations with regard to the nonexistence of the marriage by the heirs or other witnesses called by the heirs, the children, then Bussey would be allowed to present testimony with regard to rebuttal evidence or evidence contrary to that." Thus, the court also appears to have relied upon an exception in the former version of the dead man's statute that allowed otherwise barred rebuttal testimony "[o]nce any witness has been permitted to testify concerning a conversation or transaction with a deceased . . . person." Colo. Sess. Laws 1977, ch. 200, § 13–90–102(1.5) at 822; *cf.* § 13–90–102(1)(c), C.R.S.2003 (allowing testimony where an "opposing party introduces evidence of related communications").

We disagree with the trial court on two grounds.

First, contrary to the trial court's conclusion, the testimony by Bussey had a direct effect on the amount to be distributed to the Crenshaws. Because the decedent died intestate, Bussey stood to enjoy the marital share of the estate as a common law spouse, and in accordance with Colorado's laws for intestate succession, a spouse is allowed to take an elective share of the estate that would directly diminish and adversely affect the shares of the children. *See generally* § 15–11–201, et seq., C.R.S.2003. Indeed, when Bussey filed her application for appointment as the personal representative, she acknowledged that she was interested in the estate, and her interest could only have come through her spousal share. In this respect, the trial court misperceived that the dead man's statute was only applicable where the size of the estate as a whole would be diminished. Instead, the dead man's statute applies any time the witness stands to share in the estate to the detriment of the other heirs. *Breeden v. Stone, supra*. Clearly, Bussey's expected marital share diminished the other heirs' interests.

We therefore conclude that the trial court misapplied the dead man's statute in finding that the estate was not diminished for purposes of the statute.

Second, the trial court's reliance on the rebuttal exception was misplaced. The court having ruled that Bussey could testify, the Crenshaws had no choice but to offer evidence tending to contradict the existence of a common law marriage. Had the trial court properly excluded Bussey's evidence, the Crenshaws would not have been forced to adduce evidence of conversations with the decedent, and the rebuttal exception would have been unavailable to Bussey.

We base our conclusion in part on the test stated in *Thor v. McDearmid, supra*. There, testimony could have been contradicted by the deceased persons and thus was not allowed. The object of the dead man's statute is to prevent persons from advancing their interests to the impairment of heirs' interests. Here, the decedent, if living, could have refuted Bussey's testimony and disproved the existence of a common law marriage.

We are also mindful that dead man's statutes were created as exceptions to a broad common law rule that disqualified interested parties from testifying in their own favor. *In re Estate of Farr*, 150 Vt. 196, 552 A.2d 387 (1988). Thus, the statutes are intended to allow otherwise inadmissible evidence,

rather than to create rules of disqualification. Because they are in derogation of the common law, they must be strictly construed and applied. *In re Estate of Farr, supra.*

We also note that the initial object of the Crenshaws' proceeding was to disqualify Bussey as the personal representative, and not to divide the decedent's property or to determine entitlement to it, which would have clearly called into question the applicability of the dead man's statute. *See Smith v. Smith,* 257 S.W.2d 335 (Tex.Civ.App.1953). However, the proceeding eventually determined the validity of the common law marriage, which directly affected the amount of the estate to be distributed to the Crenshaws. Common law marriages are a "fruitful source of perjury and fraud." *Azimow v. Azimow,* 146 Ind.App. 341, 345, 255 N.E.2d 667, 670 (1970)(quoting from *Estate of Dittman v. Biesenbach,* 124 Ind.App. 198, 115 N.E.2d 125 (1953)). Thus, when the very purpose of a witness, as the purported common law wife and widow of a decedent, is ultimately to gain a share of the estate, we decline to allow that witness to testify regarding her marriage with the decedent, the validity of which would diminish the interest of some heirs.

Because we cannot say that the jury verdict was not based in part upon Bussey's testimony, the Crenshaws must be afforded a new trial at which her testimony is excluded.

In light of our ruling, we decline to address the remaining issues raised in the appeal.

The judgment is vacated, and the case is remanded for a new trial.

Judge TAUBMAN and Judge DAILEY concur.